```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

BETTY A. SPENCER and
CURLIE C. SPENCER, her husband

    Plaintiffs

v.                                        Civil Action No.: 2:04-0850

SYLVESTER LEE HARRIS and
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

    Defendants

## MEMORANDUM OPINION AND ORDER

Pending before the court is the motion of the plaintiffs Betty A. Spencer and Curlie C. Spencer, filed September 9, 2004, seeking to remand the above-captioned action to the Circuit Court of Kanawha County, West Virginia. On March 16, 2005, plaintiffs filed a supplemental motion to remand, reiterating their prior positions and attaching as an exhibit the deposition of defendant Sylvester Lee Harris.

I.

This action arises from a single vehicle accident that occurred in the cross walk of Washington Street at its intersection with Capitol Street in Charleston, West Virginia, on August 26, 2002. According to the complaint, the defendant

Sylvester Lee Harris, while operating his motor vehicle, struck plaintiff Betty A. Spencer, a pedestrian, in that cross walk.[1] As a result of the accident, Mrs. Spencer claims she has suffered serious and permanent injuries.

At some point prior to the date of the accident, Harris was insured through an automobile insurance policy purchased from Oak Casualty Insurance Company ("Oak Casualty"). Compl. at ¶ 6. On September 6, 2002, in response to plaintiffs' inquiry, Oak Casualty notified the plaintiffs that Harris's policy had expired on August 7, 2002.[2] On September 11, 2002, the plaintiffs notified their insurance company, the defendant State Farm Mutual

---

[1] A West Virginia Uniform Traffic Crash Report dated August 26, 2002 is attached as an exhibit to plaintiffs' motion to remand. It indicates that Harris was driving a 1979 Ford Truck on Washington Street. The witness statements indicate that Mrs. Spencer was in the cross-walk approaching the lane in which Harris was traveling when the traffic signal governing Washington Street changed to green.

[2] This notification came in the form of a letter from a claims department representative of Oak Casualty to plaintiffs' counsel. Def.'s Resp. at Ex. A. The representative wrote that:

> Please be advised that the policy that Mr. Harris had purchased with this company lapsed effective August 7, 2002 for nonpayment of renewal premium. Since the accident occurred after the policy lapsed, August 26, 2002, there is no applicable coverage for this accident.

Id.

2

Automobile Insurance Company ("State Farm") that Harris was not insured.  In that notice, plaintiffs asserted a claim for uninsured motorist benefits under their automobile insurance policy.  Specifically, in his September 11, 2002, letter to State Farm, plaintiffs' counsel wrote "[b]y this letter, you are being put on notice of an uninsured claim against Mrs. Spencer's automobile policy . . . ."  Def.'s Resp. at Ex. B.

On July 9, 2004, the plaintiffs commenced this action in the Circuit Court of Kanawha County, West Virginia, against the defendants Harris and State Farm.  Plaintiffs claim that Harris negligently operated his motor vehicle and that their injuries (Mrs. Spencer's personal injuries and Mr. Spencer's economic and loss of consortium injuries) were the direct and proximate result of Harris's negligence.  The plaintiffs further claim that State Farm violated the West Virginia Unfair Trade Practices Act, W. Va. Code §§ 33-11-1, et seq. ("UTPA"), by failing to negotiate in good faith to effect a prompt, fair and equitable settlement of plaintiffs' claim after liability became reasonably clear.

That same day, July 9, 2004, a summons was issued for State Farm.  On July 15, 2004, service of the summons and complaint was accepted on behalf of State Farm by the West

Virginia Secretary of State.  The action was removed by State Farm to the court on August 11, 2004.

As its basis for removal, State Farm contends that the court has diversity jurisdiction.  Although conceding Harris is a resident of West Virginia, State Farm asserts Harris is a nominal party whose citizenship may be disregarded for purposes of determining jurisdiction.  Pursuant to W. Va. Code § 33-6-31(d), State Farm thereafter appeared in its own name to answer the allegations of the complaint.

Subsequent to removal, plaintiffs filed a one-page motion to amend on September 7, 2004, seeking to join Oak Casualty and the West Virginia Insurance Guaranty Association as party defendants.  Plaintiffs contend that those entities are indispensable parties to this action.[3]  Their motion is unaccompanied by a supporting memorandum of law or a proposed

---

[3] In their motion to remand, filed September 9, 2004, the plaintiffs assert that Oak Casualty has filed a notice of bankruptcy.  State Farm has noted that Oak Casualty was liquidated and declared insolvent under Illinois law pursuant to a November 19, 2002, agreed order entered by the Circuit Court of Cook County, Illinois. Def.'s Resp. Mot Amend. at Ex. A.  Based on Oak Casualty's insolvency, plaintiffs filed a claim with the West Virginia Insurance Guaranty Association which is a statutorily created "nonprofit unincorporated legal entity" existing to provide protection for claimants in West Virginia whose insurers have become insolvent. W. Va. Code §§ 33-26-1, et seq.

amended complaint.

On September 9, 2004, plaintiffs filed their motion to remand, contending that the action was improperly removed inasmuch as Harris is a resident of West Virginia, did not consent to removal and is not a nominal party.  In the alternative, the plaintiffs state that the addition of the non-diverse party, West Virginia Insurance Guaranty Association, divests the court of diversity jurisdiction.

On September 29, 2004, a summons was issued for Harris.  The record further indicates that service of the summons and complaint was effected upon Harris on November 1, 2004.  Pursuant to a subpoena issued by plaintiffs, Harris was deposed on February 23, 2005.  Harris, however, has not appeared, retained an attorney or filed a responsive pleading.

II.

"A defendant may remove any action from a state court to a federal court if the case could have originally been brought in federal court."  <u>Yarnevic v. Brink's, Inc.</u>, 102 F.3d 753, 754 (4th Cir. 1994) (citing 28 U.S.C. § 1441).  The district courts have original jurisdiction in cases between citizens of different states where the amount in controversy exceeds $75,000.  28

U.S.C. § 1332.  Where a case is removed from state court, diversity of citizenship "must be established at the time of the removal."  <u>Higgins v. E.I. Dupont de Nemours & Co.</u>, 863 F.2d 1162, 1166 (4th Cir. 1988).

"The burden of establishing federal jurisdiction is placed upon the party seeking removal."  <u>Mulcahey v. Columbia Organic Chems. Co., Inc.</u>, 29 F.3d 148, 151 (4th Cir. 1994). Because removal jurisdiction raises significant federalism concerns, a district court must strictly construe removal jurisdiction.  <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108 (1941).  If federal jurisdiction is doubtful, remand is necessary.  <u>Mulcahey</u>, 29 F.3d at 151 (citing <u>In re Business Men's Assurance Co. of America</u>, 992 F.2d 181, 183 (8th Cir. 1993)). The defendant bears the burden of demonstrating federal jurisdiction under the preponderance of evidence standard. <u>Landmark Corp v. Apogee Coal Co.</u>, 945 F. Supp. 932, 935, n. 2 (S.D. W. Va. 1996).

A motion to remand is a threshold test of the court's jurisdiction and is measured from the allegations of the complaint at the time of removal.  Plaintiffs have sought to amend their complaint by adding Oak Casualty and West Virginia Insurance Guaranty Association as defendants.  Those entities

6

were not parties to this action at the time of removal and their citizenship is not relevant to the initial remand determination.

As noted, State Farm does not dispute Harris's residency in the State of West Virginia. Rather, it contends that Harris is a nominal party and aptly notes that if Harris is a nominal party neither his citizenship nor the matter of his consent is relevant to the court's determination. The sole dispositive issue relevant to the motion to remand is whether Harris is a nominal party.

"[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Navarro Savings Assoc. v. Lee, Jr., 446 U.S. 458, 460-61 (1980). "Nominal parties are generally those without a real interest in the litigation." Bumberger v. Insurance Co. of N.A., 952 F.2d 764, 767 (3rd Cir. 1991). The Fourth Circuit has stated that "in diversity cases the general rule is that citizenship of the real parties in interest is determinative for purposes of diversity jurisdiction." Roche v. Lincoln Property Co., 373 F.3d 610, 615 (4th Cir. 2004). This court has noted that:

> The requirement that diversity is based only upon the citizenship of real and substantial parties to the controversy parallels, but is not identical to, the

>       requirement of Rule 17(a) of the Federal Rules of Civil
>       Procedure that an action must be prosecuted by the real
>       party in interest.  Under, Rule 17(a), in a diversity
>       action, the procedural "real party in interest" is the
>       party granted a cause of action under substantive state
>       law.  By contrast, for purposes of determining
>       diversity of citizenship, a 'real party in interest' is
>       one who has a "'substantial stake' in the outcome of
>       the case."

<u>State of West Virginia v. Morgan Stanley & Co. Inc.</u>, 747 F. Supp. 332, 336-37 (S.D. W.Va. 1990) (internal citations omitted).

A claim for uninsured motorist benefits is governed by W. Va. Code § 33-6-31(d) which provides that:

>       Any insured intending to rely on the [uninsured or
>   underinsured motorist] coverage required by subsection
>    (b) of this section shall, if any action be instituted
>   against the owner or operator of an uninsured or
>   underinsured motor vehicle, cause a copy of the summons
>   and a copy of the complaint to be served upon the
>   insurance company issuing the policy, in the manner
>   prescribed by law, as though such insurance company
>   were a named defendant; such company shall thereafter
>   have the right to file pleadings and to take other
>   action allowable by law in the name of the owner, or
>   operator, or both, of the uninsured or underinsured
>   motor vehicle or in its own name.
>
>       Nothing in this subsection shall prevent such
>   owner or operator from employing counsel of his or her
>   own choice and taking any action in his or her own
>   interest in connection with such proceeding.

<u>Id.</u>

Section 33-6-31(d) defines the rights of a carrier when an uninsured or underinsured tortfeasor is sued by the

policyholder.  Syl. Pt. 3, <u>State ex rel. Allstate Ins. Co. v. Karl</u>, 437 S.E.2d 749 (W. Va. 1993).  Although a claim for uninsured motorist benefits is a first-party claim, § 33-6-31 generally does not provide a direct cause of action against the uninsured or underinsured motorist carrier.  Syl. Pt. 2, <u>Postlewait v. Boston Old Colony Ins. Co.</u>, 432 S.E.2d 802 (1993).  This section is "primarily designed to enable the carrier to raise policy defenses it may have against the plaintiff under its uninsured or underinsured policy."  Syl. Pt. 4, <u>State ex rel. Allstate Ins. Co. v. Karl</u>, 437 S.E.2d 749 (1993).  However, an uninsured motorist carrier is permitted to answer in its own name even when the defenses it raises does not pertain to coverage issues under the policy.  Syl. Pt. 4, <u>State ex rel. State Farm Mut. Auto. Ins. Co. v. Canady</u>, 475 S.E.2d 107 (W. Va. 1996).

The principal case cited by both parties in their discussions of jurisdiction is <u>Kidd v. Gilfilen</u>, 170 F.Supp.2d 649 (S.D. W. Va. 1999).  In that case, the court found that the uninsured motorist carrier, State Farm, and not the uninsured tortfeasor, Gilfilen, was the real party in interest based upon W. Va. Code § 33-6-31(d) and the circumstances present in the action.  The court noted that Gilfilen had not appeared, had not

9

exercised any control or decisionmaking in the course of the litigation, and was "likely" judgment proof, all of which made her stake in the litigation "minimal at best." Id. at 651-52. The court found that Gilfilen "is named only as a means to a more substantial end, namely the establishment of her liability for resulting damages to the Kidds so as to trigger State Farm's inchoate obligation to pay on its motorist coverage." Id. at 652. The court disregarded Gilfilen's citizenship but stated in a footnote that "[i]t is conceivable in a future uninsured motorist coverage action that the uninsured motorist might retain counsel and demonstrate the requisite stake and control to qualify as the real party in interest." Id. at 652, n. 2.

Relying on that footnote, plaintiffs undertake to distinguish Kidd from their action, arguing that Harris has a stake in this litigation as evidenced by his deposition appearance and a prior statement given to State Farm. In his deposition, Harris testified that he had stopped his vehicle in the left hand lane of four-lane Washington Street at the intersection where the accident occurred. Dep. Harris at p. 21. He had done so by pulling up to the crosswalk in obedience to the traffic control light that was then red. Id. at pp. 21 & 23. When the light changed to green, he started his vehicle forward

10

when he spied a woman in the crosswalk, "digging in her purse" and looking down, as she walked toward what would have been the right front of his vehicle.  Id. at pp. 23 & 38.  His speed had reached about three miles per hour at that instant and he stopped "real quick."  Id. at p. 22.  Harris further testified, "I didn't hit her, you know.  My truck didn't even touch her."  Id. at p. 23.  Harris added,

> As far as I know, I stopped in time.  The lady put her hand on the side of my truck, and some guy, he comes running across the street, and told her -- because I think she was going to keep going, you know, because I didn't hit her.  And he was like "well, lay down."  So he laid her in the street, you know."

Id. at p. 25.  Implicit in Harris's account is that he was not at fault; rather, the gist of his testimony is that the plaintiff, Mrs. Spencer, was walking across the street against the light, was not looking ahead, and walked into and put her hand on his vehicle while maintaining her balance.

Although Harris has not entered an appearance in the action and has not hired an attorney, he has defended his actions by his testimony.  While not engaging an attorney to represent him, he was aware that State Farm had engaged an attorney to defend this lawsuit.  Id. at p. 38.  Inasmuch as State Farm had done so and had removed this action to this court on August 11, 2004, being long before Harris was even served with the summons

11

and complaint on November 1, 2004, it is understandable that Harris may have found it unnecessary to hire an attorney when one was already defending this lawsuit without cost to him.

Plaintiffs also contend that Harris has been "continuously employed," asserting that Harris has a monetary interest at stake in this litigation.  This contention has some merit.  While Harris is not shown to possess assets of particular value,[4] he has testified to holding employment at the University of Charleston through a temporary agency for the past four months.  Over the years he has worked various jobs which appear to be of a modest or low-paying nature.  Id. at pp. 12-15.  Nevertheless, Harris's employment record suggests that plaintiffs, in the event of a favorable judgment, may have an opportunity to garnish his wages to obtain partial satisfaction of a judgment though plaintiffs would doubtless seek and gladly accept recovery in a lump sum payment from the insurance company.

In light of Harris's testimony, the court may not conclude, as was presumed in Kidd, that he, as the alleged

---

[4]Harris has testified that he is 40 years old, had lived in Charleston most of his life and is married with a child from a previous relationship. Dep. Harris at pp. 6-7 & 9.  He further testified that he is currently living with his mother. Id. at pp. 6 & 8.

12

tortfeasor, is judgment proof or that he has no interest in this litigation and its outcome that will decide whether he is at fault and possibly affect his ability to obtain vehicle liability insurance in the future.  The court accordingly finds that he is not a nominal party and his citizenship may not be disregarded.  Inasmuch further as it is conceded that Harris is a resident of West Virginia, diversity jurisdiction is not present.

### III.

For the reasons set forth, it is ORDERED that:

1.  The plaintiffs' motion for remand and supplemental motion for remand be, and they hereby are, granted; and

2.  The parties shall bear their own costs and expenses in connection with the motion to remand, the notice of removal and the proceedings in this court.

The Clerk is directed to forward copies of this written opinion to all counsel of record.

DATED: April 26, 2005

_____
John T. Copenhaver, Jr.
United States District Judge